UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| CURTIS L. DOWNING, et al.,<br><br>                    Plaintiffs,<br>v.<br>STEVEN B. WOLFSON, et al.,<br><br>                    Defendants. | Case No. 2:16-cv-02131-APG-PAL<br><br>**REPORT OF FINDINGS AND RECOMMENDATION**<br><br>(IFP Apps. – ECF Nos. 10, 14, 23, 33, 34) |

This matter is before the court on Plaintiffs Curtis L. Downing, Erick M. Brown, Edwin Artiga, Fabian F. Rosas, and Oscar Perez-Marquez's Applications to Proceed *In Forma Pauperis* (ECF Nos. 10, 14, 23, 33, 34) and a screening of Plaintiffs' proposed complaint (ECF No. 1-1) pursuant to 28 U.S.C. §§ 1915 and 1915A. These Applications and the screening are referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4 of the Local Rules of Practice.

## **BACKGROUND**

Plaintiffs are prisoners in the custody of the Nevada Department of Corrections ("NDOC") and they are proceeding in this civil rights action *pro se*, which means they are not represented by an attorney. *See* LSR 2-1. The caption of the complaint (ECF No. 1-1) names 18 plaintiffs: Edwin Artiga, Jeffrey M. Austin, Paul Barfield, Erick M. Brown, Alan D. Daniels, Gaston Joseph Danjou, Curtis L. Downing, Jerry B. Johnson, Demetrius Joseph, Jeffrey T. Lark, Scott Nichols, Oscar Perez-Marquez, Robert Reiger, Fabian F. Rosas, Gary Shepard, Christopher Willing, Nicholas Willing, Elder Zacarias-Lopez. Three plaintiffs did not sign the complaint: Jeffrey M. Austin, Demetrius Joseph, and Robert Reiger. One individual, Kelvin Wilson, signed the complaint but was not included in the caption. *See* Compl. (ECF No. 1-1) at 28.[1] This case arises from Plaintiffs'

---

[1] Based on the omission from the caption, it appears that the court's docketing clerks did not include Mr. Wilson as a plaintiff in this case. Wilson filed a certificate of interested parties (ECF No. 27), financial

allegations that the Nevada statutes upon which they were prosecuted, convicted, and sentenced are unconstitutional and the Nevada state courts lacked jurisdiction to incarcerate plaintiffs based on unconstitutional laws. Plaintiffs seek declaratory and injunctive relief.

Plaintiffs commenced this action on September 7, 2016, by filing their complaint (ECF No. 1-1), but they did not pay the filing fee or submit applications to proceed *in forma pauperis* ("IFP"). The court entered an order informing plaintiffs that the complaint would be retained but no further action would be taken until the matter of the payment of the filing fee is resolved. *See* Order (ECF No. 2). The court ordered that by October 13, 2016, "plaintiffs must either: (1) file a fully complete application to proceed without prepayment of fees, or (2) pay the full $400 fee for filing a civil action." *Id*. Plaintiffs were warned that their failure to timely comply with the order may result in this case being dismissed without prejudice. *Id*.

On September 30, 2016, Plaintiff Curtis L. Downing filed a Motion for Extension of Time to Comply (ECF No. 3). Downing indicated that he is the "lead plaintiff" in this case. He asked for additional time for plaintiffs to comply because he needed to notify his co-plaintiffs of the court's order and dispense the IFP applications. He represented that most of the plaintiffs were incarcerated at the Southern Desert Correctional Center ("SDCC") but he estimated that two had moved to different NDOC facilities. Additionally, Mr. Downing indicated that he was no longer in the general population at SDCC as he was placed in administrative segregation. His affidavit stated that he would notify the SDCC law library staff and the legal mail officer of the need to provide IFP applications to his co-plaintiffs.

The court granted this motion and ordered that "by November 14, 2016, each of the plaintiffs must either: (1) file a fully complete application to proceed without prepayment of fees, or (2) pay the full $400 fee for filing a civil action." *See* Oct. 4, 2016 Order (ECF No. 4). The court repeated its previous caution that plaintiffs' failure to timely comply with the order may

///

---

certificate (ECF No. 28), and letter (ECF No. 29) asking the court to excuse his tardiness. He did not file an IFP application. The court entered an Order (ECF No. 32) stating that Wilson was not a plaintiff in this action and, therefore, his documents were rogue filings. The clerk of the court was instructed to return the documents to Mr. Wilson along with a copy of the order.

2

result in this case being dismissed without prejudice." *Id.* Additionally, the court warned plaintiffs that "each must sign his own court filings and none can sign for any other." *Id.*

Up to this point in the proceedings, the docket indicates that only Mr. Downing received notice of the Orders (ECF Nos. 2, 4) since he provided only his own inmate number and address in the initial filings. However, plaintiffs subsequently filed IFP applications (ECF Nos. 10, 14, 23, 33, 34) and certificates of interested parties (ECF Nos. 5, 6, 7, 8, 11, 15, 16, 17). Two plaintiffs filed a financial certificate (ECF Nos. 39, 40), which is one of the forms in an IFP application, but they omitted the other requirements.[2] Two prisoners, Melvin Coleman and Leon McCoy, who were not named anywhere in the complaint, filed a certificates of interested parties (ECF Nos. 9, 25) and McCoy also filed a financial certificate (ECF No. 26). The court entered Orders (ECF Nos. 13, 30) stating that Coleman and McCoy were not plaintiffs in this action and, therefore, their documents were rogue filings. The clerk of the court was instructed to return the documents.

## DISCUSSION

### I. PRO SE PLAINTIFFS CANNOT REPRESENT OTHERS OR BRING A CLASS ACTION

Only a licensed attorney—an active member of the State Bar of Nevada admitted to practice under the Nevada Supreme Court Rules— is authorized to represent a client in Nevada. *Guerin v. Guerin*, 993 P.2d 1256, 1258 (Nev. 2000) (citing NRS 7.285); *Martinez v. Eighth Jud. Dist. Ct.*, 729 P.2d 487, 488 (Nev. 1986) (an individual "has no right to be represented by an agent other than counsel in a court of law"). In federal courts "the parties may plead and conduct their own cases *personally or by counsel*." 28 U.S.C. § 1654 (emphasis added). Although an individual is entitled to represent himself or herself, no rule or statute permits a non-attorney to represent any other person, a company, a trust, or any other entity. *Jackson v. United Artists Theatre Circuit, Inc.*, 278 F.R.D. 586, 596 (D. Nev. 2011); *Salman v. Newell*, 885 P.2d 607, 608 (Nev. 1994). Thus, pro se parties may not pursue claims on behalf of others in a representative capacity. *See, e.g., Simon v. Hartford Life*, *Inc.*, 546 F.3d 661, 664–65 (9th Cir. 2008) (collecting cases and noting

---

[2] LSR 1-2 and 28 U.S.C. § 1915 specifically require three items be submitted to this court with a prisoner's IFP application: (1) a financial certificate signed by an authorized officer of the institution in which he or she is incarcerated, (2) a copy of his or her inmate trust account statement for the six-month period prior to filing, and (3) a signed financial affidavit showing an inability to prepay fees and costs or give security for them and declaring under the penalty of perjury that the application is true and correct.

that courts routinely prohibit pro se plaintiffs "from pursuing claims on behalf of others in a representative capacity"); *Russell v. United States*, 308 F.2d 78, 79 (9th Cir. 1962) ("A litigant appearing in propria persona has no authority to represent anyone other than himself.").

Upon review of the complaint and recent filings, it appears that Mr. Downing is attempting to represent the interests of all other plaintiffs and, in effect, engage in the unauthorized practice of law. Although the complaint contained the names and signatures of his co-plaintiffs, Downing only provided his own inmate number and address when he commenced this action. Parties are responsible for keeping the court apprised of their mailing address and their failure to do so may result in dismissal of the action or other sanctions. *Carey v. King*, 856 F.2d 1439, 1441 (9th Cir. 1988); *see also* LR IA 3-1; LSR 2-2. By making himself the only point of contact for the case, he created a communication barrier between the court and the other plaintiffs. This was apparent in Mr. Downing's first motion since he requested additional time for plaintiffs to comply because he needed to notify his co-plaintiffs of the court's order and dispense IFP applications.

The court warned plaintiffs that "each must sign his own court filings and none can sign for any other." *See* Oct. 4, 2016 Order (ECF No. 4). Plaintiffs were further warned that their failure to comply with the order may result in this case being dismissed without prejudice. *Id*. However, on January 24, 2017, Downing filed a Motion for Temporary Restraining Order and Preliminary Injunction (ECF Nos. 36, 37). The motion and supporting declaration state that plaintiffs are submitting the motion "by and through Lead Plaintiff, Curtis L. Downing." *Id*. at 1, 29. Downing signs the motion and declaration as "Lead Plaintiff Pro Se" and asks for relief on behalf of all plaintiffs. *Id*. at 28, 32. On February 3, 2017, Downing filed a Motion Demanding Jury Trial (ECF No. 38) following the same pattern. Downing's representations and the lack of inmate numbers and addresses for other plaintiffs strongly suggest that he is attempting to act as their legal representative, despite the court's warning.[3] Given plaintiffs' failure to comply with the court's order that each plaintiff sign his own filings and the complaint's deficiencies noted in the screening below, the court finds that a recommendation of dismissal is warranted.

---

[3] The failure of multiple plaintiffs to comply with the court's Orders (ECF Nos. 2, 4), along with the lack of inmate numbers, addresses, and signatures on the complaint, also cast doubt on whether all plaintiffs are receiving notice of court filings or whether they consented to bring this action.

Additionally, pro se prisoners may not bring class actions on behalf of other prisoners. *See, e.g.*, *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975) (holding it was "plain error" for the district court to allow an "imprisoned litigant who is unassisted by counsel to represent his fellow inmates in a class action").[4] Pro se prisoners are not qualified to act as class representatives because they are unable to fairly represent and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a); 18A Wright et al., Federal Practice & Procedure § 4455 (2d ed. 2002) (The "central purpose" of a class action "is to establish a judgment that will bind not only the representative parties but also all nonparticipating members of the class certified by the court.").

Here, plaintiffs specifically allege that the complaint is properly maintained under Rule 23 of the Federal Rules of Civil Procedure.[5] Rule 23 governs the prerequisites for maintaining a class action. The complaint alleges that the prosecution of separate complaints in separate actions would create a risk of (A) establishing incompatible standards of conduct for plaintiffs, and (B) substantially impairing or impeding plaintiffs' ability to protect their interests. Compl. (ECF No. 1-1) at 25–26 (citing Fed. R. Civ. P. 23(b)(1)). In addition, the complaint contends that final declaratory and injunctive relief is appropriate for the whole class of defendants. *Id.* at 26 (citing Fed. R. Civ. P. 23(b)(2)). As explained, pro se prisoner plaintiffs may not bring class actions on behalf of their fellow inmates. Should plaintiffs want to pursue their claims as a class, they will need to hire counsel. Mr. Downing will not be permitted to engage in the unauthorized practice of law by purporting to represent or act on behalf of another plaintiff or anyone else.

---

[4] *See also Endsley v. California ex rel. Brown*, 627 F. App'x 644, 645 (9th Cir. 2015) (complaint was procedurally defective because the plaintiff was a non-lawyer who could not represent other members of the proposed class in a class action suit); *DeBrew v. Atwood*, 792 F.3d 118, 131–32 (D.C. Cir. 2015) (finding that "a *pro se* litigant who is not trained as a lawyer is simply not an adequate class representative"); *Howard v. Pollard*, 814 F.3d 476, 478 (7th Cir. 2015) (noting that decisions in multiple circuits have established a principle that district courts do not abuse their discretion by denying class certification "on the ground that a pro se litigant is not an adequate class representative"); *Grayton v. United States*, 514 F. App'x 645, 646 (9th Cir. 2013) (finding that summary judgment on putative class claims was "proper because pro se litigants have no authority to represent anyone other than themselves"); *Fymbo v. State Farm Fire & Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000) (holding that a *pro se* plaintiff is not an adequate class representative "because the competence of a layman is clearly too limited to allow him to risk the rights of others"); *Langan v. United Servs. Auto. Ass'n*, 69 F. Supp. 3d 965, 988–89 (N.D. Cal. 2014) ("*Pro se* plaintiffs may not serve as counsel for a class.").

[5] All references to a "Rule" or the "Rules" in this Order refer to the Federal Rules of Civil Procedure.

## II. SCREENING THE COMPLAINT

Federal courts must screen prisoners' complaints and any amended complaints prior to a responsive pleading. 28 U.S.C. § 1915; *Jones v. Bock*, 549 U.S. 199, 213–14 (2007). The court must conduct a screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). In its review, a court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. 42 U.S.C. § 1997e (Prison Litigation Reform Act of 1995 (PLRA)); 28 U.S.C. § 1915A(b). When a court dismisses a complaint upon the initial screening, a plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995); *see also Lopez v. Smith*, 203 F.3d 1122, 1127–29 (9th Cir. 2000) (en banc) (although the PRLA requires dismissal of a faulty complaint, a court retains discretion to grant leave to amend if the deficiencies could be cured).

The court is required to dismiss a prisoner's action if the complaint fails to state a claim upon which relief may be granted, is legally "frivolous or malicious," or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). In determining whether a complaint is frivolous and therefore warrants complete or partial dismissal, a court is not bound to accept without question truth of plaintiff's allegations. *Denton v. Hernandez*, 504 U.S. 25, 32 (1992). Allegations are frivolous when they are "clearly baseless," *id.*, or lack an arguable "basis in law or fact." *Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005). Frivolous claims include those based on legal conclusions that are untenable (*e.g.*, claims against defendants who are immune from suit or claims of infringement of a legal interest that clearly does not exist), as well as claims based on fanciful factual allegations (*e.g.*, fantastic or delusional scenarios). *Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991). Malicious claims are those "filed with the intention or desire to harm another." *King*, 398 F.3d at 1121; *Washington*, 833 F.3d at 1055. The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under §§ 1915 and 1915A is the same as

the standard under Rule 12(b)(6) for failure to state a claim. *See El-Shaddai v. Zamora*, 833 F.3d 1036, 1043 (9th Cir. 2016); *Washington*, 833 F.3d at 1055–56.

Allegations in a *pro se* complaint are held to less stringent standards than formal pleading drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Hebbe v. Pliler*, 627 F.3d 338, 342 n.7 (9th Cir. 2010). However, *pro se* litigants "should not be treated more favorably than parties with attorneys of record," *Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986); rather, they must follow the same rules of procedure that govern other litigants. *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995).

### A. Plaintiffs' Factual Allegations and Claims for Relief

The proposed complaint (ECF No. 1-1) names as defendants: (1) Steven B. Wolfson, Clark County District Attorney; (2) Las Vegas Metropolitan Police Department; (3) Angela M. Bello, Nye County District Attorney; (3) Nye County Sheriff's Department; (4) Mark Torvinen, Elko County District Attorney; and (5) Elko County Sheriff's Department.

Plaintiffs allege that the Nevada statutes upon which they were prosecuted, convicted, and sentenced are all facially unconstitutional. The complaint challenges the facial validity, construction, application, and/or enforcement of more than 20 Nevada criminal statutes along with related state court practices and procedures. *Id*. at 4–5. These statutes are allegedly void because they are derived from unconstitutional legislative acts of the Nevada legislature. *Id*. at 5. Therefore, any offense created by the disputed statutes is not a crime and a conviction under one of these statutes cannot be a legal cause of imprisonment because no court can acquire jurisdiction to convict a person for conduct that was only made criminal by an unconstitutional law. *Id*. at 6–7. The complaint repeatedly asserts that "an unconstitutional act is no law."

The complaint alleges the Nevada Constitution provides for a "tripartite government" consisting of the executive, legislative, and judicial branches, and no person charged with the duties and powers of a particular branch may exercise any functions of another branch. *Id*. at 5–6 (citing Nev. Const. art. 3, § 1). Based on this separation of powers principle, justices and judges are ineligible for other offices. *Id*. at 8 (citing Nev. Const. art. 6, § 11). The Nevada Constitution also states that each law enacted by the Legislature "shall embrace but one subject, and matter,

properly connected therewith. *Id*. at 14 (quoting Nev. Const. art. 4, § 17). In addition, "no law shall be enacted except by bill." *Id*. at 14 (quoting Nev. Const. art. 4, § 23).

In 1951, the legislature approved Senate Bill No. 182 creating a commission for the revision and compilation of Nevada laws. *Id*. at 5. The commission was composed of three members and those members were three justices of the Nevada Supreme Court. *Id*. at 7. Senate Bill No. 182 provided the three justices with the power and authority to complete a revision and compilation of Nevada law. *Id*. Because the three justices were members of the judicial branch, plaintiffs allege that the justices were barred from exercising any executive or legislative function and the revision and compilation of Nevada law violated the state constitution. *Id*. As revised and compiled by the justices, the Nevada laws are not valid laws, nor is any law derived from or added to those laws, because those laws were made criminal only through an unconstitutional legislative act. *Id*. Plaintiffs allege that the violations of the Nevada Constitution caused a collapse of the tripartite government, which has remained uncorrected since 1951. *Id*. at 10–11.

In 1957, the legislature approved Senate Bill No. 2 to enact the Nevada revised statutes ("NRS") as law. *Id*. at 13. The NRS are the result of the commission's revision and compilation. *Id*. The "bulk enactment" of the NRS based on the commission's work was a further violation of the state constitution as it dealt with more than one subject and enacted laws outside of Senate Bill No. 2 (*i.e.*, the NRS). *Id*. at 13–14, 16.

Additionally, the complaint alleges that in 1911, the legislature enacted multiple measures via a single bill, which included a provision incorporating the town of Las Vegas and establishing its boundaries. *Id*. at 18. The single act authorized the establishment of a city government and "other matters relating thereto." *Id*. at 18. The municipal court was established and its jurisdiction was authorized for violations of city ordinances. *Id*. at 19. The authorization of this jurisdiction was unconstitutional because the legislature attempted to enact a law embracing multiple subjects, which violated the Nevada Constitution. *Id*. Thus, the legislature's act should be treated as void and as though jurisdiction never existed. *Id*. Plaintiffs arrested in Las Vegas were brought before courts that lacked personal or subject matter jurisdiction. *Id*. at 20. Specifically, the Eighth Judicial District Court lacked jurisdiction to convict plaintiffs and impose sentences. *Id*. at 20–21.

Due to the collapse of Nevada's tripartite government and the constitutional violations alleged in the complaint, plaintiffs allege they have no adequate state court remedy to resolve their claims in the Nevada state courts. *Id*. at 21. They bring their complaint to federal court "to be judged of higher judges." *Id*. at 23.

Citing 42 U.S.C. §§ 1981, 1982, 1983, and 1985, the complaint alleges violations of rights under the First, Fourth, Ninth, and Fourteenth Amendments of the United States Constitution. The complaint further alleges violations of the plaintiffs' privileges and immunities and denial of due process and equal protection. Plaintiffs seek a declaratory judgment that all of Nevada criminal statutes and legislative enactments enumerated in the complaint are unconstitutional, and injunctive relief enjoining defendants, their agents, employees and officers from enforcing the enumerated criminal laws and legislative enactments.

For the reasons discussed below, the court finds that the complaint does not state a proper basis for this court's jurisdiction.

### B. Jurisdictional Deficiency

Federal district courts do not have appellate jurisdiction over a state court, whether by direct appeal, mandamus, or otherwise. *See, e.g., Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482–86 (1983); *Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003). This jurisdictional principle, explained in the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994), effectively bars Plaintiff's claims. In *Heck*, the Supreme Court held that a plaintiff cannot succeed on a § 1983 claim that necessarily implicates the constitutionality of the plaintiff's state conviction or sentence. 512 U.S. at 484–87. In other words, § 1983 cannot be used to indirectly attack a criminal conviction unless the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus. *Id*. The Supreme Court provided the following example of a situation in which the *Heck* doctrine applies:

> A state defendant is convicted of and sentenced for the crime of resisting arrest, defined as intentionally preventing a peace officer from effecting a *lawful* arrest. … He then brings a § 1983 action against the arresting officer, seeking damages for

> violation of his Fourth Amendment right to be free from unreasonable seizures. In order to prevail in this § 1983 action, he would have to negate an element of the offense of which he has been convicted. Regardless of the state law concerning res judicata, see n. 2, *supra*, the § 1983 action will not lie.

*Id.* at 486 n.6. The *Heck* doctrine also applies to a plaintiff's § 1985 claims to the extent they are predicated on a theory that undermines a plaintiff's convictions. *See*, *e.g.*, *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (clarifying that the *Heck* rule applies regardless of the form of remedy sought); *Guerrero v. Gates*, 442 F.3d 697, 703 (9th Cir. 2006) (concluding that *Heck* barred plaintiff's civil rights claims alleging wrongful arrest, malicious prosecution and conspiracy among police officers to bring false charges against him).

When a state prisoner files a civil rights action, a district court must consider whether a judgment in the plaintiff's favor "would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck*, 512 U.S. at 487. A prisoner "may challenge the validity of his arrest, prosecution, and conviction *only by writ of habeas corpus*." *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996) (emphasis added); *see also Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005) (holding that a prisoner in state custody cannot use a § 1983 action to challenge "the fact or duration of his confinement," but instead must seek federal habeas corpus relief or the appropriate state relief).

Here, the complaint clearly challenges the fact of plaintiffs' arrests, convictions, and subsequent incarceration so as to render their convictions and sentences invalid. Plaintiffs allege that they "have already been arrested, charged, prosecuted, convicted, sentenced, and imprisoned under one (1) or more of the challenged statutes." Compl. (ECF No. 1-1) at 5. They ask this court to issue a declaratory judgment in their favor. *Id.* at 24. Plaintiffs represent that they are still in the custody of the NDOC as a result of state court convictions. Thus, they cannot demonstrate that their convictions or sentences have already been invalidated. The court finds that plaintiffs' claims are plainly barred under the *Heck* doctrine. Because it is clear from the face of the complaint that plaintiffs could not cure these deficiencies by amendment, the undersigned recommends that this case be dismissed without prejudice.

### III.  IN FORMA PAUPERIS APPLICATIONS

Pursuant to 28 U.S.C. § 1915 and LSR 1-1 of the Local Rules of Practice, any person who is unable to prepay the fees in a civil case may apply to the court for authority to proceed *in forma pauperis* ("IFP"), meaning without prepaying the full $400 filing fee.[6]  However, the court must apply "even-handed care" to ensure that "federal funds are not squandered" to underwrite frivolous claims at public expense. *Temple v. Ellerthorpe*, 586 F. Supp. 848, 850 (D.R.I. 1984).

Having reviewed the complaint, the court will recommend denial of Plaintiffs' IFP applications because the court lacks jurisdiction over their claims.  A "district court may deny leave to proceed in forma pauperis at the outset if it appears from the face of the proposed complaint that the action is frivolous or without merit." *Minetti v. Port of Seattle*, 152 F.3d 1113, 1115 (9th Cir. 1998) (concluding that district court did not abuse its discretion by denying IFP application where complaint was barred by res judicata and judicial immunity) (quoting *Tripati v. First Nat'l Bank & Trust*, 821 F.2d 1368, 1370 (9th Cir. 1987)); *Dalton v. United States*, 422 F. App'x 644, 645 (9th Cir. 2011) (holding that district court did not abuse its discretion by denying prisoner's request to proceed in forma pauperis because it appeared from the face of the complaint that the action was *Heck*-barred); *Ghazibayat v. SBC Advanced Sols., Inc.*, 288 F. App'x 408 (9th Cir. 2008) (affirming the district court's denial of IFP application where complaint that was barred by *Rooker-Feldman* doctrine on its face).

Two plaintiffs, Nicholas Willing and Erick Brown, have already paid the $400 filing fee in this case. *See* Receipt of Payment (ECF Nos. 12, 22).  Mr. Brown initially sought IFP status, *see* IFP App. (ECF No. 14); however, his application was rendered moot when he paid the filing fee. Mr. Willing did not seek IFP status.  Because it is clear Mr. Downing has been attempting to act as plaintiffs' legal representative, and the individuals wishing to participate in this case have not received direct notice from the court as the court had no address at which to serve them the court
/ / /

---

[6]  The $400 filing fee consists of a $350 base fee and a $50 administrative fee.  Pursuant to the court's Schedule of Fees dated January 1, 2015, the administrative fee of $50 does not apply to persons granted IFP status under 28 U.S.C. § 1915.

further recommends that the Clerk of the Court be ordered to refund Nicholas Willing and Erick Brown's $400 filing fees.

Based on the foregoing,

**IT IS RECOMMENDED** that:

1. Plaintiffs' Complaint be DISMISSED WITHOUT PREJUDICE.
2. Plaintiffs Curtis L. Downing, Erick M. Brown, Edwin Artiga, Fabian F. Rosas, and Oscar Perez-Marquez's Applications to Proceed *In Forma Pauperis* (ECF Nos. 10, 14, 23, 33, 34) be DENIED.
3. The Clerk of the Court be ordered to REFUND Nicholas Willing and Erick Brown's $400 filing fees
4. The Clerk of the Court be instructed to close this case and enter judgment accordingly.

Dated this 27th day of March, 2017.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE

### NOTICE

This Report of Findings and Recommendation is submitted to the assigned district judge pursuant to 28 U.S.C. § 636(b)(1) and is not immediately appealable to the Court of Appeals for the Ninth Circuit. Any notice of appeal to the Ninth Circuit should not be filed until entry of the district court's judgment. *See* Fed. R. App. P. 4(a)(1). Pursuant to LR IB 3-2(a) of the Local Rules of Practice, any party wishing to object to a magistrate judge's findings and recommendations of shall file and serve *specific written objections*, together with points and authorities in support of those objections, within 14 days of the date of service. *See also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72. The document should be captioned "Objections to Magistrate Judge's Report of Findings and Recommendation," and it is subject to the page limitations found in LR 7-3(b). The parties are advised that failure to file objections within the specified time may result in the district court's acceptance of this Report of Findings and Recommendation without further review. *United*

*States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).  In addition, failure to file timely objections to any factual determinations by a magistrate judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation.  *See Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991); Fed. R. Civ. P. 72.